The direct engagement of the endorser of a negotiable note, and of the guarantor of the payment of a note, whether negotiable or not, is the same. Both undertake that the maker will pay the amount when it shall become due. If there is a failure in such payment, both contracts are broken. Ordinarily, upon the breach of a contract, the party bound for its performance immediately becomes liable for the consequent damages. In the case of the endorser of a negotiable promissory note, however, the liability does not become absolute, unless due notice of non-payment is given to the party whom it is intended to charge. That is not because the endorser has thus stipulated in terms, but it is a condition annexed by the rules of the commercial law. In the case of a guarantor there is nothing to exempt him from the ordinary liability of parties who have broken their contracts, which is direct and not conditional. No condition requiring notice of non-payment is inserted in the contract, nor is any inferred by any rule of law. The guarantor is bound to ascertain for himself whether his contract has been performed, and can easily obtain the requisite information from the party for whose conduct he has assumed the responsibility. If he fails to do that, there is no principle which would authorize him to inflict upon another the consequences of his own neglect.
The rule that no notice of non-payment by the principal is requisite in order to charge the guarantor has been well established in England. (Somersal v. Bamaly, Cro. Jac. 287;Atkinson Rolfe's case, 1 Leon. 105; Pitman v.Biddlecombe, 4 Mod. R. 230; Smith v. Goff, 11 id. 48,and 2 Salk. 467; Brookbank v. Taylor, Cro. Jac. 605;Com. Dig. tit. Pleader, C. 75; Warrington v. Furbor, 8East, 242.) There are, however, several cases in the United States courts, and in the courts of some of our sister states, where it has been decided that notice of non-payment was necessary as well to charge guarantors as endorsers. But the English rule has been adopted, and, *Page 231 
I believe, uniformly sustained in this state. In Allen v.Rightmere, (20 John. R. 365,) the note was payable to the defendant or order, and he had endorsed and signed a guaranty of payment. The objection was raised, and it was the only point in the cause, that no demand of payment and notice of non-payment had been proved, but it was decided that neither was necessary. The same decision was made in Hugh v. Gray, (19 Wend. 202,) where the guaranty was endorsed on a note payable to bearer. In both of those cases, as in the present case, the defendant would have been considered as an ordinary endorser, and as such, entitled to notice of non-payment, had it not been for the unconditional engagement contained in the guaranty. The various authorities in this country and in England were elaborately examined by the late Mr. Justice Cowen, in Douglass v.Hubbard, (24 Wend. 35,) and he came to the conclusion, and with the court decided, that in such cases notice is not necessary, even as a preliminary to bringing an action; much less to found a right of action. We have no doubt but that the rule dispensing with the notice, conforming as it does with what the parties have said, and no doubt intended, is a sound one, and shall adhere to it.
The principal question in these cases of guaranty which has been raised and discussed in our courts, and which has not yet been clearly and definitively settled, (at any rate not in the court of dernier ressort,) is whether the undertaking is, in the words of the statute, a special promise to answer for the debt, default or miscarriage of another person, or is an original promise of the guarantor? That must depend upon the terms of the instrument which the guarantor has signed, and the object which he intended to accomplish. The note being subscribed by the maker, and by him only, clearly indicates that the amount, which he promises to pay, is his debt. The guaranty as clearly says that the undertaking of the maker in the note shall be performed. In other words, the guarantor engages that the maker of the note shall pay the money. But the written guaranty does not ordinarily, nor so far as I have seen in any case, say for what purpose the party who subscribes it engages that such payment shall be made by another person. That is, I *Page 232 
conceive, necessary in order to show whether the engagement was wholly collateral or original, and as it does not appear from the paper, it may be proved by parol evidence. The object in such cases is to apply the terms of the instrument to its designed subject matter. Starkie says in his work on evidence, (vol. 3,p. 1023,) "it is always necessarily a matter of extrinsic evidence to apply the terms of an instrument to a particular subject matter, the existence of which is also a matter of proof. A difficulty in this case occurs where, although the terms of the instrument be sufficiently definite and distinct, the objects to which it is to be applied are not equally so, and where it is doubtful whether the description applies at all to the particular object pointed out by the evidence, or whether it be not equally applicable to several distinct objects." Judge Cowen remarks inDouglass v. Howland, (24 Wend. 42,) that "some of the most difficult cases on the rule respecting the ambiguitas latens of written contracts have arisen on these guaranties. You are to see what they mean in such cases by looking to collateral facts or surrounding circumstances. You do this in order to sustain the most solemn contracts, such as deeds or wills." Such evidence has been given in most of the cases of guaranty which have come before our courts, and so far as appears from the reports, generally without objection. It was received, and allowed to control the construction of the guaranty as to its being collateral or original, in Johnson v. Gilbert, (4 Hill,
178.) I attach the more consequence to the opinion of the court in that case, as it was given by my brother, Bronson, who had gone farther than any other judge of the late supreme court, (but I am by no means prepared to say too far,) in holding that these contracts were generally collateral.
If it is clear from the evidence that the sole design of the guarantor is to secure the debt of another, and upon a consideration having reference exclusively to the security of such debt, it matters not when the guaranty was made, nor what was the particular consideration; whether it be that the money was advanced to the real debtor at the request of the guarantor and on his promise to secure re-payment, or that the creditor has agreed to extend the time of payment, or that money has been *Page 233 
paid for the security, the undertaking is purely collateral and within the statute. There is clearly nothing in the word "guaranty" to import that it is an original undertaking, nor is there any thing in that or in the attending circumstances in the class of cases to which I now allude, which warrants the conclusion that the guarantor is, or may be considered as, a co-promissor with the maker of the note, or an original absolute contractor for the payment of the debt. Some of the cases in the late supreme court have undoubtedly gone thus far, but they have not been uniform. (Leonard v. Vredenburgh, 8 John. 27;Parker v. Wilson, 15 Wend. 343.) Nor have they received the sanction of the court for the correction of errors, or of this court. Chancellor Walworth intimates a concurring opinion inProsser v. Luqueer, (4 Hill, 423,) but the decision of that case did not turn on that point, and the opinion, although emanating from an eminent judge, is not a controlling authority.
If it turns out from the evidence that the contract of guaranty is purely collateral, it is of course necessary to its validity that the consideration should be expressed in the writing. The legislature designed to protect parties not only against the loose recollections and uncertain interpretations of witnesses, but also against their own inconsiderateness in entering into obligations for others, which might eventuate in their own ruin. The statute therefore requires that not only the agreement but the consideration should be in writing, and as a necessary consequence that such consideration should be sufficient. If the principal contract and the guaranty are both on the same piece of paper, and written at the same time, they are considered as one transaction, and the signature of the guarantor is deemed a subscription by him not only to the guaranty, but also to the acknowledgment of the consideration expressed in the note, and both taken together are therefore considered as a compliance with the statute. Whether this is not in effect straining what is actually done by the guarantor, in order to meet the equity of particular cases, it is now too late to inquire. The rule has been settled in the court for the correction of errors. If, however, the guaranty is written at a time subsequent to the perfection of the note, the transaction is distinct. The consideration *Page 234 
expressed in the note cannot be transferred to the guaranty, and unless that states a valid consideration, it is necessarily void. (Fisk v. Hutchinson, 2 Wils. R. 94; Charter v. Becket,
7 D. E. 201; Wain v. Walters, 5 East, 10; Leonard v.Vredenburgh, supra.)
But, as I have already intimated, a guaranty may be proved by the attending circumstances, to be an original promise. That depends upon the object which the guarantor designs to accomplish. If he intends, by the payment of the note which he guarantees, to discharge a distinct obligation of his own, one not originally at all connected with, or having reference to, the note, then he in effect contracts for himself, and his undertaking is original and not within the statute, and no consideration need be expressed in the guaranty. He engages to discharge his own obligation through the agency of another. It matters not if he even transfers the note so as to enable the new holder to maintain a suit upon it in his own name. All that, is done as a means of satisfying the debt of the guarantor. The principle is stated very clearly, and illustrated very ably, by Mr Justice Bronson, in Johnson v. Gilbert, (4 Hill, 178.) In Tomlinson v. Gill, (Amb. R. 330,) Lord Harwicke held that if the consideration for the promise takes its root in a transaction distinct from the original liability, the case is out of the statute. The cases of Gold v. Phillips, (10 John. 412,) Farley v. Cleavland, (4 Cowen, 432,) and Olmstead
v. Greenly, (18 John. 12,) are to the same effect.
In the case under consideration, it appeared from the evidence, that Chester Brown, the defendant, owed Curtis, the plaintiff below, on a note for borrowed money. Brown wished to take up the note, and offered in lieu of it a note made by his brother, G.F. Brown: Curtis answered, "I know nothing of your brother's circumstances, but if you will guaranty the note I will take it;" upon which Chester Brown wrote and subscribed the guaranty in question, and delivered it to Curtis. This is a plain and palpable case of a promise of a guarantor to pay his own debt through the note of another, and, what is a material fact to denote the main design of the transaction, the whole credit was given to the guarantor. It is therefore clearly an original *Page 235 
undertaking, and neither within the letter of the statute, nor the mischief which it was designed to prevent.
As the liability of the defendant below was that of a principal, and not of a surety merely, he could not (if he could under any circumstances) be exonerated from it by any omission of the plaintiff to institute proceedings for the collection of the note. I think the judgment should be affirmed.
JEWETT, Ch. J., and GARDINER, J., were of opinion that the guaranty was within the statute of frauds, and therefore void.
Judgment affirmed.¹